UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DEBORAH H.,                          )
                                    )
                Plaintiff,           )
                                    )
        v.                           )          No. 1:20-cv-03201-RLY-MPB
                                    )
KILOLO KIJAKAZI,                     )
                                    )
                Defendant.           )

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.

R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No.

12). Plaintiff Deborah H..[1] seeks judicial review of the Social Security Administration's final

decision deeming her ineligible for Disability Insurance Benefits (DIB). The matter is fully

briefed. (Docket No. 13; Docket No. 14; Docket No. 15). It is recommended that the District

Judge **AFFIRM** the decision of the Commissioner of the Social Security Administration finding

that Plaintiff Deborah is not disabled.

## I.    PROCEDURAL BACKGROUND

On March 20, 2018, Deborah filed an application for DIB under Title II of the Social

Security Act, alleging disability beginning February 3, 2018. (Docket No. 10-5 at ECF pp. 2-3).

Her application was denied initially, (Docket No. 10-3 at ECF p. 2), and on reconsideration,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the
recommendation of the Court Administration and the Case Management Committee of the
Administrative Office of the United States Courts, the Southern District of Indiana has opted to
use only the first name and last initial of non-governmental parties in its Social Security judicial
review opinions.

(Docket No. 10-3 at ECF p. 32). On January 8, 2020, Administrative Law Judge, Livia Morales, conducted a hearing at which Deborah, her counsel, and an impartial vocational expert appeared and testified. (Docket No. 10-2 at ECF pp. 36-72). On February 24, 2020, the ALJ issued a decision finding that Deborah was not disabled from her alleged onset date through the date of the decision. (Docket No. 10-2 at ECF pp. 16-29). The Appeals Council denied Deborah's request for review, making the ALJ's decision the Commissioner's final decision subject to judicial review under 42 U.S.C. § 405(g). (Docket No. 10-2 at ECF pp. 2-4). On December 15, 2020, Deborah timely filed this civil action, asking the court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

Deborah contends that the ALJ commits two separate errors. First, she argues that the ALJ's hypotheticals to the vocational expert and ultimate residual functional capacity ("RFC") assessments are flawed as they do not provide justification for the conclusion that she can perform a full range of work at all exertional levels and, specifically, that she can frequently balance, kneel, crouch, and crawl despite severe osteoarthritis in her left knee. She further contends that there are no accommodations for her bilateral hand tremors or her difficulties maintaining adequate attention, concentration, and persistence due to severe difficulties with cognition, focus, racing thoughts, lack of motivation, and anxiety. Second, Deborah argues that the ALJ fails to adequately address SSR 16-3p, which requires an ALJ to consider several factors in the subjective symptom evaluation.

## II.    STANDARD FOR PROVING DISABILITY

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. §

404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

## III.    STANDARD OF REVIEW OF THE ALJ'S DECISION

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she has made, and she must trace the

path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

## IV.  FACTUAL BACKGROUND

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Deborah was not disabled. (Docket No. 10-2 at ECF p. 28). At step one, the ALJ found that Deborah met the insured status requirement through June 30, 2023, and had not engaged in substantial gainful activity[2] since February 3, 2018, the alleged onset date. (Docket No. 10-2 at ECF p. 18). At step two, the ALJ found that Deborah had the following severe impairments: osteoarthritis and effusion of the left knee; anxiety disorder; depressive disorder. (*Id.*). At step three, the ALJ found that Deborah did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 10-2 at ECF p. 19). Of relevance to this Court's review, the ALJ's Step three analysis including finding that Deborah had moderate limitations with regard to concentrating, persisting, or maintaining pace. (*Id.* at ECF p. 20).

After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can frequently balance, kneel, crouch, and crawl. She can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds. She can frequently operate a motor vehicle or work with moving, mechanical parts. She can frequently be exposed to dust, odors, fumes, humidity, wetness, and pulmonary irritants. She can never work at unprotected heights. She is limited to the performance of simple, routine tasks.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

(Docket No. 10-2 at ECF pp. 21-22). At step four, the ALJ found that Deborah was unable to perform her past relevant work. (Docket No. 10-2 at ECF p. 278). At step five, considering Deborah's age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Deborah can perform, including Hand Packager, General Laborer, and Factory Helper. (Docket No. 10-2 at ECF p. 28).

## V.  DISCUSSION

As described at the outset, Deborah makes two assertions of error.

**1.    The RFC finding is supported by substantial evidence.**

Deborah argues that the ALJ failed to provide a function-by-function assessment of her RFC. (Docket No. 13 at ECF p. 16). First, Deborah argues that the ALJ failed to explain how her RFC accounted for her osteoarthritis and effusion of her left knee, which the ALJ deemed a severe impairment. (*Id.* at ECF pp. 17-18). Second, Deborah argues that the ALJ erred by deeming her hand tremors to be non-severe and excluding them from her RFC evaluation. (*Id.* at ECF pp. 19-21). Third, Deborah argues that her severe limitations in concentration and persistence were inadequately accounted for in both the RFC and the hypotheticals provided to the vocational expert. (*Id.* at ECF pp. 21-28). Finally, Deborah argues that there is an overall lack of rationale to support the RFC. (*Id.* at ECF pp. 28-31).

The RFC finding is the most an individual can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). The ALJ is responsible for determining the RFC, considering all relevant medical and other evidence in making that determination. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). Deborah bears the burden of presenting evidence that shows her functional limitations prevent

her from working. 42 U.S.C. § 423(d)(5)(A); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about [her] medical condition, to do so."). Thus, Deborah has the burden of proving that her RFC was more restrictive than the ALJ found, while the Commissioner must show that substantial evidence supported the ALJ's decision. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

    *A.  Osteoarthritis and effusion of the left knee*

Deborah argues that the ALJ did not explain how she is capable of performing a full range of work at all exertional levels, frequently balancing, kneeling, crouching, and crawling despite her osteoarthritis and effusion of the left knee. Deborah specifically argues, citing portions of the record, that the ALJ fails to explain how a 60-year old individual with osteoarthritis of the knee, with pain, swelling, limited range of motion, loss of coordination, shuffling or abnormal, ataxic gait, and inability to squat is capable of a full range of working including frequent standing and walking, lifting and carrying unlimited weight, and frequent kneeling, crouching, and crawling.

The ALJ found that Deborah had the severe impairment of "osteoarthritis and effusion of the left knee," noting that Plaintiff was diagnosed with that condition shortly before her alleged onset date, and that the consultative examiner similarly assessed her with osteoarthritis of the left knee. (Docket No. 10-2 at ECF pp. 18, 22-23). In finding that her left-knee condition was "severe," the ALJ discounted the prior administrative findings of Drs. Ruiz and Brill, who independently reviewed the record and found that Deborah had no severe physical impairments. (Docket No. 10-2 at ECF p. 26; Docket No. 10-3 at ECF pp. 9, 24-25). The ALJ explained that a finding of "no severe impairment" was inconsistent with the medical evidence and Deborah's own reports about her activities and explained that her left-knee impairment "require[s]

accommodation with postural [ ] limitations." (Docket No. 10-2 at ECF p. 26). Consequently, the ALJ limited Deborah to frequent balancing, kneeling, crouching, and crawling, and only occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds. (Docket No. 10-2 at ECF p. 21).

The ALJ explicitly stated that she considered Deborah's own allegations that her knee pain "impacts her ability to lift, squat, stand, and kneel," as well as her own subjective reports about her activities. (Docket No. 10-2 at ECF pp. 22, 26). The ALJ's departure from the State agency findings "illustrat[es] reasoned consideration" of Plaintiff's allegations. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("This [RFC] finding was more limiting than that of any state agency doctor or psychologist, illustrating reasoned consideration given to the evidence Burmester presented."). *See also Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."); *Braun v. Colvin*, No. 1:14-cv-00744-RLY, 2015 WL 4532617, at *2 (S.D. Ind. July 27, 2015) (upholding ALJ decision where "the ALJ's RFC finding is much more deferential to Plaintiff's subjective complaints than the opinions of the state agency physicians who opined that Plaintiff could perform the full range of medium work").

Moreover, while Deborah argues that the ALJ failed to build an accurate bridge between her severe knee impairment and the postural limitation in the RFC, she fails to show how the evidence demonstrated greater limitations, as is her burden. *Bowen*, 482 U.S. at 146 n. 5. Deborah points to evidence that she was assessed with osteoarthritis of the knee, demonstrated a reduced range off knee motion on one occasion, and was unable to squat at the consultative examination. (Docket No. 13 at ECF p. 18, citing Docket No. 10-7 at ECF pp. 64, 68, 71, 74, 207; Docket No. 10-8 at ECF p. 87, 91, 95, 99, 100). But the ALJ discussed this very evidence in

the decision. The ALJ noted that Deborah presented to the emergency department on December 27, 2017, prior to her alleged onset date, reporting that she had fallen and injured her left knee and that she was ultimately diagnosed with osteoarthritis of the left knee and given pain medication. (Docket No. 10-2 at ECF p. 22, citing Docket No. 10-7 at ECF pp. 64-70). The ALJ cited Deborah's January 8, 2018, presentation to her primary care physician, also prior to her alleged onset date, where she reported pain and swelling in her left knee after falling. The ALJ's assessment included noting that while the physical examination revealed some tenderness with flexion and some effusion, Deborah displayed normal range of motion. (Docket No. 10-2 at ECF p. 22, citing Docket No. 10-7 at ECF pp. 71-78).

Next, the ALJ discussed Deborah's May 4, 2018, presentation to her primary care provider where she reported worsening pain and swelling in her left knee after tripping and falling down the stairs five days earlier. (Docket No. 10-2 at ECF p. 22, citing Docket No. 10-8 at ECF p. 95-108). The ALJ explicitly acknowledged on exam Deborah "was noted to have decreased range of motion of the left knee, but no pain to palpation. She had an abnormal single foot walk and ataxic gait, but exhibited no pronator drift, and had normal finger-to-nose testing." (*Id.*). The ALJ also cited Deborah's September 12, 2018, physical consultative examination where Deborah was noted to have a painful, but full, range of motion of the left knee. (Docket No. 10-2 at ECF p. 23, citing Docket No. 10-7 at ECF pp. 206-212).

The ALJ also cited a plethora of evidence indicating that Deborah demonstrated no deficits at other appointments, including the fact that she had full strength and a normal range of left-knee motion at the consultative exam. (Docket No. 10-2 at ECF pp. 22-23, citing Docket No. 10-7 at ECF p. 207). Moreover, while Deborah cites to instances of loss of coordination and abnormal gait, she does not mention that her physician believed that many of her balance and

coordination difficulties were "likely related to adverse effects from the medication she is on," not to her knee problems. (Docket No. 10-8 at ECF p. 80). As the ALJ noted, Deborah was "weaning down" her doses of psychotropic medications in April 2019, and her neurological exam was normal at that time. (Docket No. 10-2 at ECF p. 24; Docket No. 10-8 at ECF p. 66-67). It was for the ALJ to resolve conflicts in the evidence, and this Court cannot disturb her well-reasoned findings as to Deborah's knee impairments. *Joe B. v. Berryhill*, No. 1:18-cv-02627-SEB-MJD, 2019 WL 2720778, at *4 (S.D. Ind. June 7, 2019), *adopted sub nom. Bewley v. Saul*, 2019 WL 2717884 (S.D. Ind. June 28, 2019)) ("[T]he Court will not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility.").

### B.  Hand tremors

Next, Deborah argues that the ALJ erred in finding her hand tremor to be a non-severe impairment and excluding it from her RFC evaluation. She cites the evidence that on the first day of her last job she attempted, she was unable to insert an IV into a patient due to tremors in her hand. (Docket No. 13 at ECF p. 20, citing Docket No. 10-7 at ECF pp. 171, 178).

At step two of the analysis, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination "is a threshold issue only." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). If the ALJ fails to find one impairment severe, but finds that another is severe and continues with the sequential analysis, any step two error is harmless. *See id.* (holding that any error in omitting a severe impairment was harmless where the ALJ found two impairments severe and continued with the remaining steps of the evaluation process).

The Commissioner urges the Court to find that Deborah waived the argument that her hand tremors were a severe, instead of non-severe, impairment because, as the Commissioner represents, Deborah does not directly make that argument. Deborah does specifically contend that her hand tremors were improperly deemed as non-severe, but the Commissioner is correct in the sense that that this argument is perfunctory. *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments . . . are waived"). In any event, as the above case law explains, the mere fact that an ALJ improperly classified an impairment as non-severe as opposed to severe is of no significance, so long as the case made it past this threshold step and the ALJ considered the claimant's severe and non-severe impairments in combination.

Here, the ALJ recognized that Deborah had been observed with an intention tremor in both hands, but found the impairment "not severe" because it did not cause any significant functional limitations. (Docket No. 10-2 at ECF p. 19). 20 C.F.R. § 404.1520(c) (An impairment is not severe at step two of the sequential evaluation if it does not significantly limit an individual's ability to perform basic work activities.). The ALJ recognized her duty to "consider[] all of [Deborah's] medically determinable impairments, including those that are not severe, when assessing [the RFC]." (Docket No. 10-2 at ECF p. 19). The ALJ explicitly referenced Deborah's grip strength in the RFC discussion, pointing to the results of the September 2018 consultative exam, where the examiner found she had normal grip strength bilaterally. (Docket No. 10-2 at ECF p. 23). The examiner also indicated that Deborah had "normal gross and fine finger manipulative ability" at the September 2018 consultative exam. (Docket No. 10-7 at ECF pp. 207-08). This was substantial evidence in support of the ALJ's determination that Deborah did not have any functional limitations stemming from hand tremors.

11

Deborah cites to a June 2018 report indicating that she had slightly reduced grip strength (4/5) (Docket No. 13 at ECF p. 20, citing Docket No. 10-7 at ECF p. 187). However, at this same appointment, the physician also observed that Deborah was "[a]ble to handle, seize, grasp and hold. She is able to pick [up] a coin, button-unbutton or zip-unzip with both hands." (Docket No. 10-7 at ECF p. 187). The ALJ cited to this June 2018 evidence in her discussion of the physician's assessment. (Docket No. 10-2 at ECF p. 23, citing Exhibit "11F"), indicating that she considered it. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009) ("[T]he ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to [his] conclusions.").

Deborah also relies on her subjective complaints of hand tremors. (Docket No. 13 at ECF p. 20). But, the ALJ considered her subjective complaints and supportably discounted them to the extent they were inconsistent with the medical evidence. (Docket No. 10-2 at ECF p. 22). *See Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("Although a claimant can establish the severity of his symptoms by his own testimony, his subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record.") (cleaned up). Deborah's argument amounts to a request to reweigh the evidence about hand tremors and make a finding more favorable to her, which is not the proper function on review.

C.  *Concentration, persistence, and pace*

Next, Deborah argues that her severe limitations in concentration and persistence were inadequately accounted for both in the hypotheticals to the vocational expert and in the RFC. She argues that the longitudinal record of her mental health treatment, combined with her subjective complaints, amounts to limitations not appropriately accounted for by simple, routine tasks.

"'[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record,' including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Although the hypothetical posed to the VE need not contain any "magic words," the hypothetical question must in substance fully apprise the VE of the claimant's limitations in concentration, persistence, or pace ("CPP"). *Crump*, 932 F.3d at 570.

The Seventh Circuit has "frowned at the notion that restriction to simple tasks adequately accommodates moderate CPP limitations." *Bruno v. Saul*, 817 F. App'x 238 (7th Cir. 2020) (citing *Crump*, 932 F.3d at 570). That is because a catch-all phrase like "simple, repetitive tasks" does not necessarily account for CPP problems—an individual with mental impairments that make it difficult to maintain concentration, persistence, or pace may be able to learn how to do simple, repetitive tasks while nevertheless struggling to perform such work. *See Crump*, 932 F.3d at 570 (finding limitation to "simple, routine, repetitive tasks" insufficient to accommodate moderate CPP issue); *Varga*, 794 F.3d at 814 (finding limitations to "simple, routine, and repetitive tasks" or "unskilled work" insufficient to accommodate moderate CPP issue). However, if the "ALJ used the catch-all term and elaborated further," *Debra S. v. Saul*, No. 1:18-cv-03736-SEB-TAB, 2019 WL 4675221, at *3 (S.D. Ind. Aug. 30, 2019), or it is otherwise clear that the ALJ conducted an "individualized assessment of the claimant's specific symptoms," *Bruno*, 817 F. App'x at 238, the RFC and hypothetical may sufficiently cover a CPP limitation that was not explicitly stated.

Here, the ALJ found in Step Three that Deborah has moderate difficulties in concentrating, persisting, or maintaining pace. (Docket No. 10-2 at ECF p. 20). Both the RFC

and the ultimate hypothetical to the vocational expert limited Deborah to "simple, routine tasks." (Docket No. 10-2 at ECF pp. 21, 67). As it relates to concentration, persistence, and pace, the ALJ considered evidence that Deborah displayed intact attention and concentration during January and February 2018 exams (Docket No. 10-2 at ECF p. 24; Docket No. 10-7 at ECF p. 127), and displayed intact attention (though impaired concentration) at an April 2018 exam (Docket No. 10-2 at ECF p. 24; Docket No. 10-8 at ECF p. 47). The ALJ then considered evidence from Deborah's psychiatric advanced practice nurse, indicating that Deborah's mood and mental health condition were stable. (Docket No. 10-2 at ECF p. 25). In February 2019, the ANP indicated that Deborah's concentration was "quite good when not lots of distraction" and "vastly improved over [the] past 6 months," and in June 2019, Nurse Nowak indicated that Deborah's concentration was "much, much better than it was prior to being on meds. Some days [Deborah] wants to go back to work." (Docket No. 10-8 at ECF pp. 132-33). The ALJ also considered the results of the consultative exam, during which Deborah was able to recall two-out-of-three objects after a short delay, had intact remote memory, and was able to perform mathematic calculations and serial 7's. (Docket No. 10-2 at ECF p. 25, citing Docket No. 10-7 at ECF pp. 182-84).

Finally, the ALJ considered the prior administrative findings of Drs. Gange and Lovko, who reviewed the record, including the results of the consultative exam, and found that Deborah had a "moderate" limitation in the "ability to maintain attention and concentration for extended periods," but that she was nonetheless able to perform semi-skilled work. (Docket No. 10-2 at ECF p. 26, citing Docket No. 10-3 at ECF pp. 12-14, 27-29). The ALJ was only somewhat persuaded by these prior findings, ultimately determining that Deborah was more limited than Drs. Gange and Lovko found and limiting her to only simple/routine tasks. (Docket No. 10-2 at

ECF p. 26). Because the ALJ found Deborah more limited than the State agency physicians, Deborah's claim is unpersuasive that the ALJ "formulated her own opinion" about the effects of Deborah's "moderate" limitation in concentration, persistence, or pace.

Moreover, with regards to Deborah's argument that the ALJ's hypothetical question to the vocational expert, which concerned an individual who could perform "simple" and "routine" tasks, did not fully apprise the VE about her "moderate" limitations in concentration, persistence, and pace (Docket No. 13 at ECF pp. 25-28), it is important to note that updated regulations govern this case. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138, 66147 (Sept. 26, 2016) (announcing changes effective January 17, 2017). These regulations make clear that a "moderate" limitation indicates that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 12.00F(2)(c).  The Seventh Circuit recently explained that "'fair' in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks, at a consistent pace." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).

Against this backdrop, Deborah's claim that the ALJ should have further accounted for her moderate limitation in concentration, persistence, or maintaining pace in the hypothetical question to the vocational expert is not persuasive. *Recha v. Saul*, 843 F. App'x 1, 333 (7th Cir. 2021) (explaining that "our case law has clarified that an ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations" and finding that the ALJ adequately accounted for moderate mental limitations where the state agency consultant found that the claimant could persist at simple tasks full time). Again, "a 'moderate' limitation in performing at a consistent pace seems consistent

with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek*, 994 F.3d at 783. Thus, there was no discrepancy between the ALJ's finding that Deborah had moderate limitations in concentration, persistence, and pace and the hypothetical question involving simple/routine tasks.[3] (Docket No. 10-2 at ECF pp. 68-69).

Furthermore, in a case like this one, where the ALJ "carefully reviewed the evidence in the record and relied on two doctors' opinions that [Plaintiff's] moderate [concentration, persistence, and pace] problems would be adequately addressed by" a semi-skilled-tasks limitation, there was no error in the ALJ's determination that "a simple-task limitation would address Plaintiff's moderate difficulties" with concentration, persistence, and pace. *April D. v. Saul*, No. 1:19-cv-01712-JRS-TAB, 2020 WL 10313915, at *3 (S.D. Ind. Sept. 21, 2020). "This is not a case like [*Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019), or [*Crump v. Saul*, 932 F.3d 567, 571 (7th Cir. 2019)], where the simple-task limitation was based on the overly reductive idea that people with moderate [concentration, persistence, and pace] difficulties can do simple tasks proficiently." *Id.* at *4. Rather, this was a case in which the ALJ relied upon State agency findings that Deborah was capable of even semi-skilled work despite her moderate limitations, (Docket No. 10-3 at ECF pp. 12-14, 27-29), but nonetheless found her more restricted than that. (Docket No. 10-2 at ECF p. 26). For these reasons, the RFC findings account for Deborah's moderate mental limitation.

---

[3] The ALJ included limitations in her hypothetical question to the vocational expert that were not included in the RFC finding, including only frequent interaction with coworkers, occasional interaction with the public, and dealing with changes in the work environment that relate to only simple workplace decisions. (Docket No. 10-2 at ECF pp. 68-69). Deborah does not argue that these additional limitations in the hypothetical question caused her harm, and any such argument should be deemed waived. *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020).

### D. Articulation of rationale for standing/walking limitations

Finally, Deborah argues that the ALJ failed to articulate a rationale for the RFC finding, and "simply summarized the evidence of physical and mental impairments." (Docket No. 13 at ECF p. 28). Deborah is correct that the ALJ carefully outlined a large portion of the medical evidence, but her argument that the ALJ failed to explain her rationale overlooks other parts of the decision. In addition to the above discussion, as to the left knee pain, the ALJ accepted that Deborah had "some difficulties relating to her left knee after experiencing some falls and objective imaging demonstrated minimal degenerative changes," but also determined that "physical examinations have been generally within normal limits, including normal musculoskeletal range of motion, normal strength, intact sensation, and normal gait." (Docket No. 10-2 at ECF p. 25). For this reason, the ALJ found Deborah's functioning was not decreased to the level she alleged. *Id.* As for mental impairments, the ALJ accepted that Deborah had "ongoing symptoms" in the context of life stressors (Docket No. 10-2 at ECF p. 24), but accurately noted that she experienced relief with medications, that her mental status exams were frequently normal, and that she remained independent in her daily living. (Docket No. 10-2 at ECF p. 26). The ALJ relied somewhat on the opinions of the State agency reviewing physicians, but ultimately explained that Deborah's mental impairments were more limiting than they found. (Docket No. 10-2 at ECF p. 26). "[A]n ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability," and the ALJ has certainly done that here. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

Deborah also states that the ALJ "failed to provide a function-by-function assessment of the [RFC]." (Docket No. 13 at ECF p. 16). This argument is unpersuasive as "the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a

claimant's symptoms and medical source opinions is sufficient." *Knox v. Astrue*, 327 F. App'x 652, 657 (7th Cir. 2009). This occurred here. Deborah argues that she has an "inability to stand and/or walk on a consistent basis," and that she has "difficulties sitting in one place for any length of time." (Docket No. 13 at ECF pp. 28-29, 31). However, she cites no evidence to show she was more limited in sitting, standing, or walking than the ALJ found, as is her burden. *Bowen*, 482 U.S. at 146 n.5.

### 2. The subjective symptom analysis is supported by substantial evidence.

Deborah argues that the ALJ erroneously applied Social Security Ruling 16-3p in assessing her subjective symptoms. Deborah compiles a number of shortcomings that she argues amount to error. (Docket No. 13 at ECF pp. 33-37). For instance she argues that the ALJ ignored that she performed her daily activities with significant limitations, with help, or with breaks to rest; that the ALJ overemphasized her lack of inpatient hospitalization; and made no other attempts to satisfy the requirements of SSR 16-3p.

When evaluating a claimant's subjective statements about the intensity and persistence of her symptoms, the ALJ must often, as here, make a credibility determination concerning the limiting effects of those symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). A credibility determination is only patently wrong if it "lacks any explanation or support." *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008). According to SSR 16-3p, an ALJ assesses a claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2. The Seventh Circuit has explained that the ALJ continues to assess claimants' assertions that cannot be credited or rejected based on the

objective medical evidence, but the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character . . ." *Cole*, 831 F.3d at 412. If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," including the regulatory factors relevant to a claimant's symptoms, such as daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. 2017 WL 5180304, at *6-8; 20 C.F.R. § 416.929(c)(3).

The ALJ determined that Deborah's impairments "could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Docket No. 10-2 at ECF p. 22). Throughout the decision, the ALJ gave several reasons for discounting Deborah's subjective allegations concerning both her physical and mental impairments. She also dedicated two paragraphs to Deborah's subjective symptoms. With regards to Deborah's physical impairments, the ALJ noted that "medical evidence does reflect that the claimant had some difficulties relating to her left knee after experiencing some falls and objective imaging demonstrated minimal degenerative changes.." (Docket No. 10-2 at ECF p. 25). "However," the ALJ continued, "as discussed above, physical examinations have been generally within normal limits, including noting her to have normal musculoskeletal range of motion, normal strength,

intact sensation, and normal gait." (*Id.*). The ALJ also noted that reports of neurological symptoms were "ultimately resolved and were felt to be secondary to the claimant's psychiatric medications and not due to any organic cause." (*Id.*).

With regards to mental health, the ALJ found that "the evidence reflects ongoing symptoms, but some reported relief with medications with mental status examinations noting some mood abnormalities, but also noting many normal findings as discussed above." (Docket No. 10-2 at ECF p. 26). The ALJ noted that Deborah "has not required any inpatient hospitalizations for [her] mental health impairments and remains generally independent in her activities of daily living." (*Id.*). The ALJ indicated "the evidence reveals that the claimant has maintained a high level of activity despite her impairments[,]" including "attend[ing] to her personal care needs, prepar[ing] meals, perform[ing] household chores, driv[ing] a car, appropriately handl[ing] her finances, shop[ping], read[ing], watch[ing] television, talk[ing] on the telephone to her sisters, and attend[ing] book club. (*Id.*). Further, "[t]he evidence also reveals that the claimant is able to attend medical appointments as reflected by the medical evidence contained in the record. (*Id.*).

Deborah accuses the ALJ of "cherry picking" evidence but identifies no evidence that the ALJ failed to consider. With regards to her argument that the ALJ relied on her daily activities without acknowledging her limitations, the ALJ reasonably relied on Deborah's reports that she could attend to her personal care, needs, prepare meals, perform household chores, drive a car, handle her finances, shop, read, watch television, talk on the phone with her sisters, and attend a book club. (Docket No. 10-2 at ECF p. 26; Docket No. 10-2 at ECF pp. 57-60; Docket No. 10-6 at ECF pp. 18-25, 41-48). *See Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020) ("But an ALJ is not forbidden from considering statements about a claimant's daily life. IN fact, agency

regulations instruct that, in an assessment of a claimant's symptoms, the evidence considered includes descriptions of daily-living activities."). And the ALJ also explicitly acknowledged that Deborah alleged that anxiety and depression impacted her "ability to complete tasks," and that she felt "a lack of motivation to perform tasks." (Docket No. 10-2 at ECF p. 26). Finally, the ALJ did not place undue weight on Deborah's daily activities, instead focusing primarily on the medical and opinion evidence of record. (Docket No. 10-2 at ECF pp. 21-26). *See Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013) ("The ALJ did not place undue weight on [claimant's] activities of daily living.").

With regards to the second point, the ALJ did not err in considering that Deborah had not required inpatient hospitalization for her mental impairments. (Docket No. 10-2 at ECF p. 26). The ALJ did not imply that evidence of hospitalization for a mental impairment was required in order to show disability. Instead, the ALJ referenced the lack of hospitalization as one of several factors cutting against Deborah's claim that she was incapacitated by anxiety and depression. (Docket No. 10-2 at ECF p. 26). This is not improper. *See Carwile v. Colvin*, No. 4:13-cv-00094-TWP, 2014 WL 4199246, at *7 (S.D. Ind. Aug. 22, 2014) (holding that the ALJ properly considered "lack of hospitalization in the record resulting from mental health issues," as one factor in determining that the plaintiff's allegations were less than fully credible.).

In short, the ALJ's conclusions about Deborah's subjective symptoms "contain specific reasons for the weight given to [her] symptoms, [are] consistent with and supported by the evidence, and [are] clearly articulated so [she] and any subsequent reviewer can assess how the adjudicator evaluated the evaluated [her] symptoms." SSR 16-3p. Because the ALJ gave specific reasons supported by the record, and the evidence does not show that her decision was "patently

wrong," it should not be disturbed on this basis. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018).

## VI. CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court **AFFIRM** the ALJ's opinion denying Plaintiff benefits. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 24th day of May, 2022.

Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.