UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH H.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-03201-SEB-MPB |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER SUSTAINING OBJECTIONS TO MAGISTRATE JUDGE'S REPORT & RECOMMENDATION**

Plaintiff Deborah H. ("Deborah") has appealed the final decision of the Commissioner of the Social Security Administration ("SSA") denying her March 20, 2018, application for disability insurance benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. § 423(d). The plaintiff has filed a timely objection to the Report and Recommendation by Magistrate Judge Matthew P. Brookman that the Commissioner's decision be affirmed. For the reasons explained in this Order, we SUSTAIN IN PART and OVERRULE IN PART Deborah's objections, ADOPT the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the united States Courts, the Southern District of Indiana uses only first names and last initials of non-governmental parties in Social Security judicial review opinions.
[2] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

conclusions of the Magistrate Judge to which Deborah has not objected, and REVERSE and REMAND the decision of the Commissioner.

## I. Standard for Proving Disability

To be eligible for DIB, a claimant must have a disability as defined by 42 U.S.C. § 423. The statute defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(a). In general, the claimant bears the burden of providing evidence that she is disabled, and she must show through record evidence that an impairment from which she suffers meets all applicable criteria. *See, e.g., Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The Commissioner, acting by and through the ALJ, conducts a five-step analysis to make an eligibility determination: (1) if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors; (2) if the claimant does not have a "severe" impairment (*i.e.* one that significantly limits her ability to perform basic work activities), she is not disabled; (3) the Commissioner then determines whether the claimant's impairment or a combination thereof meets or medically equals any impairment appearing in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirements; if so, the claimant is disabled;[3] (4) if the claimant can perform her past

---

[3] Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record."

2

relevant work given her Residual Functional Capacity ("RFC"), she is not disabled; and (5) if the claimant can perform any other work in the national economy, she is not disabled. *See* 20 C.F.R. § 404.1520.

## II. Background and Procedural History[4]

Deborah applied for DIB in March 2018, alleging a disability onset date of February 3, 2018. Dkt. 10-5 at 2. Her application was denied initially and again upon reconsideration. Dkt. 10-3 at 32. The administrative law judge ("ALJ") Livia Morales held a hearing on January 8, 2020, at which Deborah, her counsel, and an impartial vocational expert appeared and testified. Dkt. 10-2 at 36. ALJ Morales issued her decision on February 24, 2020, determining Deborah was not disabled from her alleged onset date through the date of the decision. *Id.* at 16–29. The Appeals Council subsequently denied Deborah's request for review, making the ALJ's decision the Commissioner's final decision, subject to judicial review under 42 U.S.C. § 405(g). *Id.* at 2.

On December 15, 2020, Deborah timely filed this civil action seeking judicial review of the final decision of the Commissioner denying her benefits. The case was referred to Magistrate Judge Brookman, who recommended that this Court affirm the decision of the ALJ and Commissioner in finding Deborah not disabled. Dkt. 17.

---

*Crump v. Saul,* 931 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)).

[4] The discussion of Deborah's medical history and treatment includes sensitive and otherwise confidential medical information that has been thoroughly detailed in the ALJ's decision, the parties' respective briefs, and the Magistrate Judge's Report and Recommendation. To the extent possible, we detail here specific facts only as necessary to address the parties' arguments.

Deborah filed timely objections to the Report and Recommendation addressing some, but not all, of the Magistrate Judge's findings. Dkt. 18. We address these objections below.

### III.     ALJ Decision

Using the five-step analysis method, ALJ Morales first determined that Deborah had not engaged in substantial gainful activity since the alleged onset date of February 3, 2018. Dkt. 10-2 at 17. At step two, the ALJ found that Deborah had the following severe impairments: "osteoarthritis and effusion of the left knee; anxiety disorder; [and] depressive disorder." *Id*. The ALJ further determined that a number of Deborah's other medical diagnoses, including an intention tremor in her hands, constituted non-severe impairments. *Id.* at 18. At step three, the ALJ found Deborah's impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. The ALJ then found that Deborah had the residual functional capacity ("RFC") to

> Perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can frequently balance, kneel, crouch, and crawl. She can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. She can frequently operate a motor vehicle or work with moving, mechanical parts. She can frequently be exposed to dust, odors, fumes, humidity, wetness, and pulmonary irritants. She can never work at unprotected heights. She is limited to the performance of simple, routines tasks.

*Id.* at 20.

At step four, the ALJ found that Deborah was not able to perform her past relevant work, as the demands of the past work exceeded her RFC. *Id.* at 26. At step five, relying on Deborah's age, education, work experience, RFC, and the testimony from a vocational

4

expert ("VE"), the ALJ determined that Deborah was able to perform jobs that exist in significant numbers in the national economy. *Id.* Accordingly, ALJ Morales concluded that Deborah had not been under a disability from February 3, 2018, through the date of the decision, February 24, 2020. *Id.* at 27.

## IV. Applicable Standard of Review

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An ALJ's decision must be based up consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines her conclusions, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability

determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

In addition, when a party raises specific objections to elements of a magistrate judge's report and recommendation, the district judge reviews those elements *de novo*, determining for herself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. Fed. R. Civ. P. 72(b). The district judge "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and it need not accept any portion as binding; the [judge] may, however, defer to those conclusions of the report and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Wight Loss Ctrs, Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009).

## V.  Discussion

On appeal, Deborah argues the ALJ committed two separate errors within the third and fourth steps of the sequential evaluation process.  First, she contends that the ALJ's hypotheticals to the vocational expert and the ultimate RFC assessments are flawed as they do not provide justification for the conclusion that she can perform a full range of work at all exertional levels and, specifically, that she can frequently balance, kneel, crouch, and crawl despite severe osteoarthritis in her left knee. She further argues that there are no accommodations for her bilateral hand tremors or her difficulties maintaining adequate attention, concentration, and persistence due to severe difficulties with cognition, focus, racing thoughts, lack of motivation, and anxiety. Second, Deborah

argues that the ALJ fails to adequately address SSR 16-3p, which requires an ALJ to consider several factors in the subjective symptom evaluation.

Deborah raises a number of objections to the Magistrate Judge's Report and Recommendation, which addressed each issue and found no errors. Many of these objections are simply reiterations of her arguments in her initial Complaint for Review, refashioned to contend that the Magistrate Judge committed the same errors as the ALJ in failing to sufficiently address the SSR 16-3p factors when assessing Deborah's credibility and subjective symptoms.[5] Dkt. 18. The Commissioner responds that reversal is inappropriate because the ALJ based her decision on substantial evidence, and each of Deborah's objections were address appropriately and in full in the Report and Recommendation. Dkt. 19.

To address these objections, we find it necessary to distinguish between the ALJ's assessment of Deborah's physical and mental impairments. In addition, the Court adopts the Magistrate Judge's recommendations as to each of the issues to which Deborah does not object.[6]

---

[5] Deborah also presents an argument for the first time in her objections that the ALJ "relied more heavily on the 'good days' or 'generally normal' exams" and thus discounted the waxing and waning of mental and physical conditions. Dkt. 18 at 2. As this issue was not briefed in her initial complaint, the Court will not consider this argument in its review. *See United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000) ("[D]istrict courts should not consider arguments not raised initially before the magistrate judge, even [if] their review . . . is *de novo*.")

[6] The issues on which Deborah did not file objections are as follows: that the ALJ failed to provide a function-by-function assessment of the RFC, including (a) failing to provide limitations from a severe impairment for her osteoarthritis; (b) improperly deeming her hand tremor as non-severe; (c) inadequately accounting for her limitations in concentration and persistence in the hypotheticals provided to the VE; and (d) lacking overall rationale to support the standing and walking limitations in the RFC. Dkt. 13 at 15–30. As she did not raise timely objections to these issues, the Court defers to and adopts the Magistrate Judge's conclusions. *See*

### i. *Deborah's Physical Impairments and Pain Symptoms*

In her objection, Deborah does not directly address the Magistrate Judge's thorough and well-reasoned discussion of her osteoarthritis; rather, Deborah's only substantive mention of her physical impairment anywhere in her briefing is with regards to her complaints of pain, which complaints she alleges the ALJ improperly disregarded because they were not fully consistent with the objective medical evidence. Having reviewed *de novo* the Magistrate Judge's analysis and conclusions, we hold, for the same reasons set forth in the Magistrate Judge's report, with which we entirely concur and hereby adopt both as to the cited authorities and related analysis, that none of the assignments of error raised by Plaintiff relating to the ALJ's and the Magistrate Judge's respective consideration of her physical impairments and related pain symptoms meets the standard required to justify remand. Accordingly, we find that Plaintiff's objections to the Report and Recommendation of the Magistrate Judge with regard to her physical impairments lack merit.

### ii. *ALJ's Assessment of Deborah's Mental Subjective Symptoms*

With regard to her mental impairments, Deborah argues that the Magistrate Judge erred in failing to find that the ALJ committed reversible error in rejecting Deborah's credibility concerning the severity of her mental impairments.

---

*Sweet v. Colvin*, No. 1:12-cv-00439, 2013 WL 5487358, *1 (S.D. Ind. Sept. 30, 2013) (quoting *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–761 (7th Cir. 2009)).

Pursuant to Social Security Ruling 16-3p, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *3. If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms . . . ." SSR 16-3p, at *6–8. This includes the regulatory factors relevant to a claimant's symptoms, like daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *Id.* at *7–8; 20 C.F.R. § 404.1529(c)(3). The ALJ need only "discuss the factors pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8. The ALJ should also consider any inconsistencies within the evidence, including conflicting statements made by the claimant and other like treating sources. 20 C.F.R. § 404.1529(c)(4). The ALJ may also consider inconsistencies between the severity of symptoms that a claimant described to the SSA compared with when she was seeking treatment. *See, e.g.*, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803–04 (7th Cir. 2009).

Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong,'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). The ALJ's subjective symptom evaluation

9

may be patently wrong where she fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribuado v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse-credibility finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (citation and internal quotation marks omitted).

At her hearing, Deborah testified that she is unable to work due to intense feelings of depression and anxiety, including being unable to wake up or get out of bed, and thinking to herself "what's the use." Dkt. 10-2 at 51. She explained that she initially left her previous work when she was unable to perform an IV insertion, and subsequently left her job because she was "in too bad shock."[7] *Id.* at 50. She often has "crying episodes" once a week, usually triggered by overly anxious thoughts. *Id.* at 61. While she did report an improvement with medications and weekly therapy over time, Deborah nevertheless testified that the "bad days" where she feels anxious, unfocused, and unmotivated happen every other day, if not daily. *Id.* at 58.

As for daily activities, Deborah testified she had anxiety while in public because she feels as if "people are watching" and that she is being "judged." *Id.* at 62. On most days Deborah stays home, "wak[ing] up about 10:30" and going to bed "about 9:00 or 9:30" every day. Her days usually consist of sitting on her couch, sometimes watching television, reading the Bible if it is a "good" day, and once a week helping her husband

---

[7] The record does not make clear whether Deborah was terminated from her employment or if she left of her own volition.

prepare a meal. *Id.* at 51–62. Some days she is able to drive to the grocery store, but reported she is "scared to drive" because "it's too much, it's overwhelming." *Id.* at 52. When she does drive, it is within her known area, and it is only to the grocery store, an AL-ANON meeting, or to see her doctor. *Id.* Regarding her concentration, Deborah reported she is sometimes able to read her Bible, but often has to go back and re-read, especially on her "bad" days, if she is able to read at all.[8] *Id.* at 58–62.

In addressing Deborah's subjective symptoms, the ALJ summarized Deborah's subjective symptoms in two sentences, including allegations of "anxiety and depression that adversely impact her memory, concentration, ability to complete tasks, and understand and follow instructions," as well as a "lack of motivation to perform tasks." Dkt. 10-2 at 21.

In addition, the ALJ regurgitated the following boilerplate language:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

Dkt. 10-2 at 21.

---

[8] This testimony is in response to the attorney's question: "How long can you like mentally focus on something like that before you're either noticing you're needing to like reread it or you just need to take a mental break?" Dkt. 10-2 at 61. Deborah begins to answer the question by talking about her "bad" days, but is interrupted by the attorney before finishing her sentence on how long she is able to retain focus on a "good" day. *Id.* The attorney then moves on to a different question before resolving Deborah's ability to focus on good days.

The ALJ also heavily relied on a summary of Deborah's daily activities when making her determination by citing to Deborah's hearing testimony, as well as two function reports, one from April 2018 and one December 2018, in concluding that Deborah has "maintained a high level of activity despite her impairments. . . [including] being able to independently attend to her personal care needs, prepare meals, perform household chores, drive a car, appropriately handle her finances, shop, read, watch television, talk on the telephone to her sisters, and attend book club." Dkt. 10-2 at 25.

None of these activities cited by the ALJ, however, supports a determination that Deborah is able to maintain full-time employment in a competitive work environment, and therefore do not constitute adequate reasons to reject her subjective complaints. *See Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017) ("[T]he ALJ did not explain why [performing daily activities] was inconsistent with [the claimant's] description of her pain and limited mobility.") The Court fails to see how being able to drive, read, or talk on the phone translates into a finding of non-disability, and the ALJ does not provide further explanation. Although it was appropriate for the ALJ to consider all relevant evidence when assessing credibility, an ALJ should not place "undue weight" on performing household chores or daily activities. *Mendez v. Barnhart*, 439 F.3d 460, 362 (7th Cir. 2006). The Seventh Circuit has time and time again held that "[t]he 'sporadic performance [of household chores and activities] does not establish that a person is capable of engaging in substantial gainful activity.'" *Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see Bjornson v. Astrue,* 671 F.3d 640, 647 (7th Cir. 2012) (the ability to perform

12

"activities of daily living," such as driving or shopping, does not undermine an allegation of disability where the claimant has "testified that she had one or two good days each week" during which those activities are concentrated.); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("[M]inimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity.").

Additionally, the ALJ's synopsis of Deborah's activities inaccurately portrays her daily life. As noted, within her testimony Deborah reported that she can do many of the activities only sparingly, on her good days, and next to none on her bad ones. Dkt. 10-2 at 57–58. Additionally, the ALJ cites to two function reports, written by Deborah, which directly contradict the ALJ's summary of her activity levels. Deborah describes in the April 2018 report being unable to do household tasks such as preparing meals or yardwork because of her low energy, trouble processing directions, and forgetfulness, including multiple occasions of accidentally leaving the stove on. Dkt. 10-6 at 211. Similarly, she reports only being able to drive or go to the grocery store "with assistance" from either her daughter or husband, who are required to help her stay on track with her activities.[9] *Id.* at 212. The ALJ seemingly ignored these qualifications in rendering her decision, which was improper for her to do. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir.

---

[9] Although not mentioned in the ALJ's decision, Deborah's husband wrote a Third Party Function Report in December 2018 which echoed many of Deborah's reports and further emphasized that she was unable to attend to most household chores or normal life activities without assistance from a family member. Dkt. 10-2 at 247. Additionally, her husband reported he maintained nearly all of the family's finances because "when she was doing it bills we're often late and she was overdraft[ing] occasionally." *Id.*

13

2008) (remanding for the ALJ's error in ignoring the claimant's "qualifications as to *how* he carried out those activities." (emphasis in original)).

In addition to the medical evidence and reports of daily activities, the ALJ rejected Deborah's allegations on the basis that she presented as relatively stable: "the evidence reflects ongoing symptoms, but some reported relief with medications with mental examinations noting some mood abnormalities, but also noting many normal findings . . ." Dkt. 10-2 at 25. Notably among the medical records the ALJ cites to are the progress notes from a psychiatric advanced practice nurse ("APRN") whom Deborah saw frequently for medication management. The ALJ determined that the progress notes "from 2018 and 2019 reflect that the claimant's mood and condition have been stable and that has remained sober." *Id.* at 24. Although a stabilization is reflected in the 2019 progress notes, the ALJ has not seen fit to include the 2018 reports in her citation, which paint a more extensive portrait of Deborah's mental health, including improvement, yes, but also instability, "excessive worry about the smallest thing," lack of motivation, and an inability to get out of bed. Dkt. 10-8 at 542–47.

Although the record reflects improvement in her symptoms, especially from the extremes of the early months of 2018, her relative stability is also not adequate grounds for rejecting Deborah's subjective symptoms. The Seventh Circuit has noted that "[s]imply because one is characterized as 'stable' or 'improving' does not necessarily mean that" a claimant is capable of the demands of full-time work. *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2004), *as amended* (Aug. 20, 2014). In fact, "[t]here can be a great distance between a patient who responds to treatment and one who is able to enter

14

the workforce." *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011). In the instant case, while Deborah has demonstrated the return to some levels of normalcy as she continued therapy and proper medication management, the ALJ has not built a "logical bridge" connecting her current level of daily activity with the rigors of a full-time job, even with the limitation ALJ Morales presents of performing only simple, repetitive tasks. It is similarly unclear how Deborah's ability to attend medical appointments once a week, as cited to in the record by the ALJ, is demonstrative of an ability to consistently accomplish full-time work when the record also shows an inability to leave the house or accomplish enjoyable life tasks on her "bad days." *See Nicole M. v. Kijakazi,* No. 1:21-cv-01970, 2022 WL 2913919 (S.D. Ind. July 22, 2022) (reversing the Commissioner's decision where "progress notes indicate that [the claimant's] conditions remained stable only when she was not in a work environment").

    Considering all of the above, the ALJ's rejection of Deborah's subjective symptoms is simply not grounded in substantial evidence considering the full factual record. "[W]e cannot uphold a decision by an administrative agency . . . if . . . the reasons given . . . do not build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Accordingly, the Commissioner and ALJ's decision must be reversed. On remand, the ALJ shall endeavor to properly evaluate Deborah's subjective symptoms as required by SSR 16-3p, and shall not reject Deborah's credibility based on the non-mental health examinations, her limited engagement in daily activities, or the perceived stability of her mental health conditions.

## **Conclusion**

For the reasons state above, the Court ADOPTS IN PART and OVERRULES IN PART the Magistrate Judge's Report and Recommendation. The Commissioner's decision is REVERSED and REMANDED to the agency under sentence four of 42 U.S.C. § 405(g) for reevaluation consistent with this opinion. Final judgment will enter by separate document. FED. R. CIV. P. 58(a).

IT IS SO ORDERED.

Date: 9/30/2022

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
Hankey Law Office
kwold@hankeylaw.com